UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES CRATTY,

    Plaintiff,

v.

CITY OF ALLEN PARK, and DANIEL MACK in his official and unofficial capacity, jointly and severally,

    Defendants.

Case No. 17-11724
Honorable Laurie J. Michelson

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [27]**

Charles Cratty was in a distinctive white truck travelling down the Southfield Freeway when the truck was pulled over by Officer Daniel Mack. Whether Cratty was the driver or passenger is at the center of this case. Mack arrested Cratty for driving without a license and ticketed Cratty's mother, Janine Cratty, for allowing her vehicle to be driven by someone without a license. But Janine Cratty was behind the wheel when Mack pulled them over and Janine Cratty avers that she had been driving all along. Mack asserts that he saw Charles Cratty driving the vehicle and that the two could have changed seats before he pulled them over. Cratty was later found not guilty.

Cratty sued Mack and the City of Allen Park for malicious prosecution and abuse of process, along with other state-law claims that were previously dismissed. Mack and the City of Allen Park now move for summary judgment on Cratty's remaining claims.

For the reasons that follow, Defendants' motion for summary judgment is granted in part and denied in part.

## I.

The Court will recount both parties' versions of the events, recognizing that it has to view the facts in the light most favorable to Cratty.

Here is what Charles Cratty says happened. On July 15, 2010, his mother, Janine Cratty, was driving him in her vehicle down the Southfield Freeway. (R. 27-4, PageID.433.) At some point, she pulled off the highway and into a gas station to buy some water. (R. 27-4, PageID.438.) Charles got out of the vehicle and went into the gas station to buy her water. (R. 27-4, PageID.438.) He was gone for about ten minutes because he struck up a conversation with the cashier, Rami Swidan. (R. 27-4, PageID.439–441.) Eventually, Cratty and his mother pulled out of the gas station and back on to Southfield, only to have Officer Daniel Mack pull them over shortly after. (R. 27-4, PageID.442.) Mack came to the passenger side of the vehicle and said, "Okay, Charlie, get out, you're going to jail." (R. 27-4, PageID.442.) Cratty complied and was handcuffed. (R. 27-4, PageID.444.) Mack searched the vehicle, wrote Janine Cratty a ticket, and transported Cratty to the police station. (R. 27-4, PageID.445.) Janine Cratty posted Cratty's bond and he was released. (R. 27-4, PageID.446.)

Mack and the City have a different version of the events.

Mack asserts that, on that evening in July 2010, he was parked on the side of the freeway when he saw Cratty driving the white truck in his side mirror. (R. 27-3, PageID.321.) Mack recognized Cratty because he had pulled him over a few months earlier. (R. 27-3, PageID.309.) During that prior traffic stop Mack learned that Cratty had a suspended license. (R. 27-3, PageID.309.) Mack recognized Cratty's long hair and that he travelled in the same distinctive ice-cream-truck-looking vehicle months before; so Mack was confident it was Cratty he saw driving.

(R. 27-3, PageID.328, 349.) He also thought he saw another white male seated in the passenger seat. (R. 27-3, PageID.327.) When the vehicle turned off the highway and into a gas station, Mack parked outside of the gas station so he would not be seen, but that left him with an obstructed view of the vehicle. (R. 27-3, PageID.326–327.) Mack chose not to conduct the traffic stop at the gas station because he had recently had a run-in with the owner of the gas station, Swidan, who did not want Mack conducting traffic stops there because it blocked the gas pumps. (R. 27-3, PageID.329.) Swidan submitted a complaint against Mack for his behavior during that earlier encounter. (R. 27-3, PageID.354–456.) So Mack waited outside of the station.

But Mack says he still saw Cratty exit the vehicle. And while he saw Cratty exit from the passenger side, he testified that the vehicle had only one door. (R. 27-3, PageID.326–327.) Mack remembers Cratty spending almost 20 minutes at the gas station before leaving. (R. 27-3, PageID.326.) Once back on Southfield, Mack pulled the vehicle over, only to find Janine Cratty driving the vehicle. (R. 27-3, PageID.332.) Confident he had seen Cratty driving previously, Mack arrested Cratty for driving with a suspended license. (R. 27-3, PageID.333.)

Cratty's trial was not held until June 2014. (R. 35-7, PageID.1059.) The judge found him not guilty. (R. 35-7, PageID.1059.)

Cratty later brought this suit against Mack and the City of Allen Park alleging malicious prosecution, abuse of process, conspiracy, conversion, and unjust enrichment. (R. 1.) The Court declined to exercise supplemental jurisdiction over his claims of conspiracy, conversion, unjust enrichment, and abuse of process "to the extent it alleges a state law claim." (R. 4, PageID.60.)

## II.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On a motion for summary judgment, the court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Edward*, 241 F.3d 530, 531 (6th Cir. 2001).

### III.

#### A.

Defendants first assert that Cratty has failed to make out a claim of malicious prosecution.

"The Sixth Circuit 'recognize[s] a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment,' which 'encompasses wrongful investigation, prosecution, conviction, and incarceration.'" *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010) (quoting *Barnes v. Wright*, 449 F.3d 709, 715–16 (6th Cir. 2006)). "The 'tort of malicious prosecution' is 'entirely distinct' from that of false arrest, as the malicious-prosecution tort 'remedies detention accompanied not by absence of legal process, but by wrongful institution of legal process.'" *Id*. (quoting *Wallace v. Kato*, 549 U.S. 384, 390 (2007)).

In order to succeed on a malicious-prosecution claim under the Fourth Amendment, Cratty must show that the defendant "made, influenced, or participated in the decision to prosecute"; that there was a lack of probable cause for the criminal prosecution; that he suffered a "deprivation of liberty" apart from the initial seizure; and that the criminal proceeding resolved in his favor. *Sykes*, 625 F.3d at 308–09 (citation omitted).

Defendants argue that Cratty has failed to meet the first two elements.

First, Defendants argue that Mack did not make, influence or participate in the decision to prosecute Cratty. (R. 27, PageID.282–283.) They say that, except for testifying at the trial, all Mack did was turn over his police report to the prosecutors, and this alone is insufficient to have influenced or participated in the decision to prosecute. (*Id.* (citing *Sykes*, 625 F.3d at 314))

The Sixth Circuit has made clear that "an officer will not be deemed to have commenced a criminal proceeding against a person when the claim is predicated on the mere fact that the officer turned over to the prosecution the officer's *truthful* materials." *Id.* at 312 (emphasis in original.) But an officer can be liable for malicious prosecution if there is evidence that he "stated a deliberate falsehood or showed reckless disregard for the truth" and that information was material to the finding of probable cause to prosecute. *Id.* (citing *Gregory v. City of Louisville*, 444 F.3d 725, 758 (6th Cir.2006)).

To this, Defendants argue that Cratty "neither ple[d] nor proved that [Mack] falsified the information in his report." (R. 27, PageID.282.) Neither is accurate. First, Cratty did plead that "Mack knew that [Cratty] was not driving the vehicle and thus knew he could not arrest and charge [Cratty] for driving the vehicle in question and therefore knew that his submission to prosecute [Cratty] was not truthful." (R. 1, PageID.11.) And after discovery, Cratty still argues that "[Mack] supplied false information in his Police Report in that he witnessed [Cratty] driving his Mother's vehicle." (R. 35, PageID.915.) Cratty does not need to prove that Mack falsified or recklessly disregarded the truth of the information in the report, he just needs to have put forth enough evidence for a reasonable jury to so find. *See Anderson*, 477 U.S. at 248.

And he does. Both Cratty and his mother testified that she was driving the entire time. (R. 27-4, PageID.439; R. 35-6, PageID.1028.) Cratty and his mother look nothing alike — Cratty is 5' 10", 180 pounds with long hair (R. 27-4, PageID.433–434) and his mother is 5' 3", 104 pounds

5

with short hair (R. 35-6, PageID.1031). The vehicle drove past Mack at 40 mph (R. 27-3, PageID.321), giving him just a few seconds to see who was driving in his side mirror (R. 27-3, PageID.323). And Mack did not pull over the vehicle at that time. Instead, he waited as the van made a stop at a gas station. While at the gas station, Mack's view of the vehicle was largely obscured. He could only see Cratty exit the passenger side. (R. 27-3, PageID.326–327.) And he never saw anyone changing places. Most significant, when Mack did pull the vehicle over, Cratty's mother was the one behind the wheel. (R. 27-3, PageID.332.) Yet Mack still made the decision to arrest Cratty. And he affirmatively represented in his police report that he had seen Cratty driving. (R. 27-2.) But Cratty and his mother both testified that she was driving the entire time. (R. 27-4, PageID.439; R. 35-6, PageID.1028.) So taking the facts in the light most favorable to Cratty, a reasonable jury could find that Mack falsified or recklessly disregarded the truth of the information in the report to support Cratty's arrest.[1]

Further, Defendants concede that "the initial decision to prosecute [Cratty] was based solely upon the information contained in [Mack's] report." (R. 36, PageID.1082–1083.) Indeed, the second prosecutor on Cratty's case, Michael Hurley, testified that he relied heavily on the police report in making the decision to prosecute. (R. 27-6, PageID.503–504, 523–524.) Thus, without any other evidence for the prosecutor to rely on, a reasonable jury could find that Mack participated in or influenced the decision to prosecute Cratty by making false statements in his

---

[1] Cratty also argues that the City of Allen Park itself participated in his prosecution. (R. 35, PageID.905.) "But a municipality may be held liable under § 1983 only where its policy or custom causes the constitutional violation in question." *Miller v. Calhoun Cty.*, 408 F.3d 803, 813 (6th Cir. 2005) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 435 U.S. 658, 694 (1978)). Whether the City can be liable for a Section 1983 violation pursuant to a *Monell* claim will be discussed below.

police report. *See Sykes*, 625 F.3d at 316; *Helmer v. Guest*, No. 09-11697, 2011 WL 379315, at *2 (E.D. Mich. Feb. 3, 2011).

Defendants also argue that there was probable cause for the prosecution because Mack had probable cause to make the arrest: he knew what Cratty looked like, knew what his van looked like, and saw Cratty driving the van. And even if Mack had made a mistake as to who was driving, that mistake will not vitiate probable cause so long as the mistake could have been made by a reasonable officer. (R. 27, PageID.284–285 (citing *Anderson v. Creighton*, 483 U.S. 635 (1987)).)

"In order to distinguish appropriately [a malicious prosecution] claim from one of false arrest, [the court] must consider not only whether the Defendants had probable cause to arrest the Plaintiff[] but also whether probable cause existed to initiate the criminal proceeding against the Plaintiff[]." *Sykes*, 625 F.3d at 310–11.

Looking first at the arrest, a jury could find a lack of probable cause. "Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *Sykes*, 625 F.3d at 306 (quotations omitted). To determine whether Mack had probable cause to arrest Cratty, the Court "consider[s] the totality of the circumstances and whether the facts and circumstances of which [Mack] had knowledge at the moment of the arrest were sufficient to warrant a prudent person ... in believing ... that the seized individual ha[d] committed ... an offense." *Id.* (internal quotations omitted). An officer can make a mistake of fact when making an arrest, but that mistake must be reasonable. *See Hein v. North Carolina*, 135 S. Ct. 530, 536 (2014). And taking the particular facts of this case in the light most favorable to Cratty (as laid out above) a jury could find that either Mack never saw Cratty driving or unreasonably believed that Cratty was driving, and therefore had no probable cause to arrest Cratty for driving with a suspended license.

7

A jury could likewise find that there was no probable cause to prosecute. "Probable cause to prosecute exists when the facts and circumstances are sufficient to lead a reasonable person to believe that the accused committed the particular offense with which he is to be charged." *Mott v. Mayer*, 524 F. App'x 179, 187 (6th Cir. 2013) (citing *McKinley v. City of Mansfield*, 404 F.3d 418, 445 (6th Cir. 2005) (affirming the district court's dismissal of the plaintiff's malicious prosecution claim because, at the time the plaintiff was charged, authorities had unchallenged evidence that the plaintiff committed the crimes of which he was accused)). Defendants concede that "the initial decision to prosecute [Cratty] was based solely upon the information contained in [Mack's] report." (R. 36, PageID.1082–1083.) But taking the facts in the light most favorable to Cratty, he was not driving and so a jury could find this untrue police report insufficient to establish probable cause to prosecute Cratty. *See Sykes*, 625 F.3d at 310–311 ("Defendants have failed to point to any untainted and truthful post-arrest evidence bearing upon whether there was probable cause to institute a criminal proceeding against [plaintiff].")

A genuine issue of material fact exists as to whether Cratty was maliciously prosecuted.

**B.**

Even if he was, Defendants argue that qualified immunity shields Mack from liability.

Qualified immunity shields government officials performing discretionary functions from suit under § 1983 "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Defendants are entitled to qualified immunity if "(1) they did not violate any of [plaintiff's] constitutional rights or (2) the violated rights, if any, were not 'clearly established' at the time of the alleged misconduct." *Ruffin v. Cuyahoga County, Ohio*, 708 F. App'x 276, 278 (6th Cir. 2018) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Once

qualified immunity is properly raised, the plaintiff must establish that Defendants are not entitled to it. *Id*. (citing *Kennedy v. City of Cincinnati*, 595 F.3d 327, 336 (6th Cir. 2010)).

As discussed, the facts taken in the light most favorable to Cratty permit the inference that Mack knew or recklessly disregarded that Cratty was not driving, yet stated otherwise in his police report. As this resulted in Cratty's prosecution, there is a genuine issue of material fact as to whether Mack violated Cratty's Fourth Amendment rights. *See Sykes*, 625 F.3d at 308–317; *Sander v. Jones*, 728 F. App'x 563, 566 (6th Cir. 2018). And "individuals have a clearly established Fourth Amendment right to be free from malicious prosecution by a defendant who has 'made, influenced, or participated in the decision to prosecute the plaintiff' by, for example, 'knowingly or recklessly' making false statements that are material to the prosecution either in reports or in affidavits filed to secure warrants." *King v. Harwood*, 852 F.3d 568, 582–83 (6th Cir. 2017) (citing *Webb v. United States*, 789 F.3d 647, 660, 665 (6th Cir. 2015)); *see also Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003). Mack is not entitled to qualified immunity as a matter of law.

## C.

Defendants also move for summary judgment on Cratty's federal abuse-of-process claim.

The Sixth Circuit has not yet recognized abuse of process as a federal claim that plaintiffs are permitted to bring under Section 1983. *See Voyticky v. Vill. of Timberlake, Ohio*, 412 F.3d 669, 676 (6th Cir. 2005). "Still, [courts] have resolved section 1983 abuse-of-process claims without deciding whether such a claim is cognizable and, in doing so, [courts] typically assume that the elements would likely mirror those of state law." *Garcia v. Thorne*, 520 F. App'x 304, 311 (6th Cir. 2013) (citing *Voyticky*, 412 F.3d at 676–77). The Court will do so here.

"Abuse of process is the wrongful use of the process of a court. This action . . . lies for the improper use of process after it has been issued, not for maliciously causing it to issue." *Lawrence*

9

*v. Burdi*, 886 N.W.2d 748, 754 (Mich. Ct. App. 2015) (quoting *Spear v. Pendill*, 130 N.W. 343, 344 (1911)). Under Michigan law, a claim for abuse of process requires a plaintiff to prove: "(1) an ulterior purpose and (2) an act in the use of process which is improper in the regular prosecution of the proceeding." *Friedman v. Dozorc*, 412 Mich. 1, 30, 312 N.W.2d 585, 594 (1981).

As Defendants point out, Cratty's allegations do not fit this claim. (R. 27, PageID.286–287.) Indeed, his argument is difficult to discern. Most of what Cratty discusses in response to Defendants' motion concerns Mack's police report. (R. 35, PageID.919–925.) But that does not make out a claim for improper use of court process—it simply mimics his malicious-prosecution claim. *See Lawrence*, 886 N.W.2d at 754. He also alleges that Mack failed to appear at three court dates (R. 27-4, PageID.452) and that he yelled at Cratty and his mother (R. 35, PageID.919–925). But that is likewise unavailing. Cratty does not allege or in any way explain how these incidents demonstrate an abuse of process.

The closest Cratty comes to raising a separate abuse of process claim is his allegation that the Defendants unduly delayed his trial. (*See* R. 35, PageID.919–927.) But the undisputed record establishes that Mack had no role in how or when Cratty's case would go to trial, nor does Cratty so allege. Cratty spends some time discussing the prosecutor's actions, as well as the court's failure to send him notices. (*Id*.) But they are not defendants and this does not appear to have anything to do with Mack. As for the City, the Court addresses Cratty's *Monell* claims in the following section.

Mack is entitled to summary judgment on Cratty's abuse-of-process claim.

## D.

The City likewise seeks summary judgment. It challenges Cratty's *Monell* claims.

"To prevail in a § 1983 suit against a municipality, a plaintiff must show that the alleged federal right violation occurred because of a municipal policy or custom." *Thomas v. City of*

*Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). "To show the existence of a municipal policy or custom leading to the alleged violation, a plaintiff can identify: (1) the municipality's legislative enactments or official policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal violations." *Baynes v. Cleland*, 799 F.3d 600, 621 (6th Cir. 2015).

With respect to his malicious-prosecution claim, it appears that Cratty is alleging both that the City knew Mack was a problem officer, yet failed to take corrective action, and that the City failed to provide him training that could have prevented the alleged malicious prosecution.

The Court begins with Cratty's claim that the City failed to take corrective action in response to Mack's history of misconduct. (R. 27, PageID.289–290.)

Defendants argue that this claim fails because Cratty has not shown that any failure on the part of the City caused the incident or any pattern of conduct that would have put the City on notice that it needed to intervene to prevent future constitutional violations. (R. 36, PageID.1083–1086.)

The Court agrees.

Cratty's primary support for this claim comes from gas station owner Swidan and Janine Cratty. (R. 35, PageID.906.) Cratty first points to an incident where Swidan asked Mack to move his vehicle because it was blocking the gas pumps at the station and Mack responded by yelling and threatening to arrest Swidan. (R. 35-5, PageID.944.) Swidan submitted a complaint and spoke with the chief of police about this incident. (R. 35-5, PageID.952; R. 35-2.) He testified that the chief of police responded that he was aware of Mack's "issues." (R. 35-5, PageID.952.) Swidan also testified to witnessing another incident where Mack allegedly yelled and berated another man at his gas station. (R. 35-2, PageID.944.) Janine Cratty testified that when she and her son spoke

11

with the chief of police about their incident, he stated that "they'd had trouble with Mack." (R. 35-6, PageID.1046.)

These facts do not support a failure-to-supervise claim. To make out such a claim, Cratty must establish that the City's flawed supervision was the "moving force" behind the unconstitutional conduct and that the City was "deliberately indifferent to known or obvious constitutional violations that would result." *Pesci v. City of Niles*, 674 F. App'x 544, 547 (6th Cir. 2017) (internal quotations and citations omitted). These two prior incidents of Mack yelling at people at a gas station do not portend his involvement in wrongful prosecutions. These incidents did not involve any arrests by Mack and Cratty does not identify what, exactly, the City failed to do. He also does not point to any evidence or even make the argument that whatever the City failed to do led to his malicious prosecution. *See Sampson v. Vill. of Mackinaw City*, 685 F. App'x 407, 418 (6th Cir. 2017).

If Cratty is alleging that the City of Allen Park acquiesced in federal rights violations, he would need to establish "(1) a clear and persistent pattern of unconstitutional conduct by [the officers]; (2) the [City's] notice or constructive notice of the unconstitutional conduct; (3) the [City's] tacit approval of the unconstitutional conduct, such that [its] deliberate indifference in [its] failure to act can be said to amount to an official policy of inaction; and (4) that the policy of inaction was the moving force of the constitutional deprivation." *Winkler v. Madison Cnty.*, 893 F.3d 877, 902 (6th Cir. 2018). While Cratty points to prior occasions when Mack acted discourteously, he does not show that any of these incidents rise to the level of unconstitutional conduct. Further, Hillock testified that he had "informal talks" with Mack "about how he treats people." (R. 35-5, PageID.1018.) Cratty does not explain how this amounts to "inaction" let alone establishes that the City had an "official policy of inaction." Lastly, Cratty has not pointed to any

12

evidence that the alleged inaction on the part of the City to address Mack's temperament issues was the "moving force" behind Mack's alleged malicious prosecution of Cratty.

The City also challenges Cratty's claim that it is liable for a failure to train. Specifically, it asserts that Cratty cannot point to a pattern of prior unconstitutional actions that would have put the City on notice of a need for better training, nor has Cratty shown that the training program itself—rather than just Cratty's training—was deficient.

Again, the Court agrees.

"*Monell's* rule that a city is not liable under § 1983 unless a municipal policy causes a constitutional deprivation will not be satisfied by merely alleging that the existing training program for a class of employees, such as police officers, represents a policy for which the city is responsible." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). Instead, "[t]o satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Connick v. Thompson*, 563 U.S. 51, 61 (2011). A plaintiff can establish this by showing that, "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton*. 489 U.S. at 390. Or, most commonly, a plaintiff can show deliberate indifference by pointing to "[a] pattern of similar constitutional violations by untrained employees." *Connick*, 563 U.S. at 62. "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *City of Canton*, 489 U.S. at 390–91. Further,

Cratty must prove that the deficiency in the training caused the alleged malicious prosecution. *Id.* at 391.

Cratty's evidence falls far short of meeting this standard. Cratty points to the fact that Mack did not receive special training after their incident. But this does not establish that the City had inadequate training pre-incident or that inadequate training caused the incident. *See City of Canton*, 489 U.S. at 390–91. Next, Cratty highlights Lieutenant Hillock's testimony that Allen Park police officers are not trained "not to arrest a person if they were not seated in the driver's seat and when the officer stops the vehicle did not witness anyone changing seats." (R. 35-5, PageID.1009.) But there is nothing in the record that the need for this type of training was "so obvious" in Allen Park and without it "so likely to result in the violation of constitutional rights" that the City of Allen Park "can reasonably be said to have been deliberately indifferent to the need." *Id.* at 390. Indeed, Cratty has not pointed to any other similar incidents that would have alerted the City to the need for such training and the City says there are none (R. 36, PageID.1084–1085). *See Connick*, 563 U.S. at 62. Lastly, Cratty suggests that Mack's prior behavior issues should have prompted the City to give Mack particular training to prevent his arrest of Cratty. But Cratty must point to how the City's training program as a whole fell short, not that Mack in particular may have been "unsatisfactorily trained." *City of Canton*, 489 U.S. at 390–91.

With respect to the abuse-of-process claim, the City argues that Cratty cannot point to a single piece of evidence that the City purposefully delayed the criminal proceedings. (R. 27, PageID.286–287.) The Court agrees. Again, the City may only be liable for such a claim if the constitutional violation occurred because of an official policy, an action taken by an official with "final decision-making authority", a policy of inadequate training or supervision, or a custom of tolerance or acquiescence of abuses of process. *Baynes*, 799 F.3d at 621. The Court cannot find

any evidence that a City official with "final decision-making authority" had anything to do with Cratty's criminal trial, or any evidence of a policy, practice or custom of the City unduly delaying criminal proceedings, or any evidence of the City being responsible for providing notice to criminal defendants. And Cratty has not put forth any evidence to the contrary.

Accordingly, Cratty's *Monell* claims fail, so the City is entitled to summary judgment.

The Court will likewise dismiss Cratty's claims against Mack in his official capacity, because "[a]s long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Cady v. Arenac Cnty.*, 574 F.3d 334, 342 (6th Cir. 2009) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). So because Cratty's *Monell* claims fail so, too, does his official-capacity claim.

E.

Alternatively, Defendants assert that Cratty's claims must be dismissed under the doctrine of laches.

"A party asserting laches must show: (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting it." *Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc.*, 270 F.3d 298, 320 (6th Cir. 2001).

Defendants assert that Cratty sat on his claims from 2011 to 2014 by missing court dates for his criminal case, including his originally-scheduled trial. But Cratty claims he did not receive notices to appear in court after March 2011 and therefore it was not his fault that his case was not resolved until 2014. (R. 27-4, PageID.464–465.) And he needed a favorable resolution in his criminal case before bringing a malicious-prosecution claim. *See Sykes*, 625 F.3d at 308–09. Defendants also fail to identify any prejudice from the delay.

15

Taking the evidence in the light most favorable to Cratty, the Court will not dismiss his claims pursuant to the doctrine of laches.

**IV.**

For the reasons stated, the Court will GRANT IN PART AND DENY IN PART Defendants' Motion for Summary Judgment. (R. 27.) Cratty's *Monell*, official-capacity, and abuse-of-process claims are dismissed. Cratty's malicious-prosecution claim against Mack (in his individual capacity) survives.

IT IS SO ORDERED.

        s/Laurie J. Michelson
        LAURIE J. MICHELSON
        UNITED STATES DISTRICT JUDGE

Dated: November 5, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record and/or pro se parties on this date, November 5, 2018, by electronic and/or ordinary mail.

        s/William Barkholz
        Case Manager